Firm E-Mail for Official Court Documents
courtdocs@dickinsonwright.com
Scot L. Claus (#014999)
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, AZ  85004-4568
Phone: (602) 285-5000
Fax: (602) 285-5100

Steven E. Holtshouser Missouri Bar No. 33531 (admitted *pro hac vice*)
Erin D. Knese Missouri Bar No. 70171  (admitted *pro hac vice*)
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO  63105
314-480-1500 Telephone
314-480-1505 Facsimile
steve.holtshouser@huschblackwell.com
erin.knese@huschblackwell.com
  *Attorneys for Plaintiff/Counterdefendant*
   *Merola Sales Company, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Merola Sales Company, Inc., | No. CV-18-00248-PHX-SPL |
| Plaintiff/Counterdefendant, | |
| vs. | |
| Tabarka Studio, Inc., | **PLAINTIFF/COUNTER-DEFENDANT MEROLA SALES COMPANY'S MOTION TO PARTIALLY DISMISS DEFENDANT/COUNTER-CLAIMANT TABARKA STUDIO'S COUNTERCLAIM** |
| Defendant/Counterclaimant. | |
| Tabarka Studio, Inc., | **(Oral Argument Requested)** |
| Third Party Plaintiff, | |
| vs. | |
| Home Depot Product Authority, LLC, et al., | |
| Third Party Defendants. | |

- 1 -

1
2
3
4
5
6

Pursuant to Rules 12(b)(1), 12(b)(6), 17(a), and 17(b) of the Federal Rules of Civil Procedure, Plaintiff /Counterdefendant Merola Sales Company, Inc. ("Merola"), requests that the Court partially dismiss Tabarka Studio, Inc.'s ("Tabarka") Amended Counterclaim because:  1) Tabarka lacks standing to seek remedies for any alleged infringement of certain works; and, 2) Tabarka has failed to state cognizable claims for certain works.

7
8

This Motion is supported by the attached Memorandum of Points and Authorities and contemporaneously filed Certificate of Counsel.

9

## MEMORANDUM OF POINTS AND AUTHORITIES

10

I.     **INTRODUCTION.**

11
12

As articulated in the Complaint, this case arises from Tabarka's assertion of copyright infringement regarding four purported works that it identifies as:

13
14

1.     Paris Metro 1;

15

2.     Paris Metro 11;

16

3.     Casablanca 2; and,

17

4.     Touareg 6.

18

(collectively, the "Works").

19
20
21
22
23
24
25
26

The Amended Counterclaim alleges that Casablana 2 was "created" in 2007 and that Paris Metro 1 and Paris Metro 11 were "created" in 2008.  (Amended Counterclaim at ¶ 17). Tabarka admits that registration of the Works in the United States Copyright Office was not sought until August 15, 2017.  (Amended Counterclaim at ¶¶ 29-31). Tabarka further concedes that the registration for Casablanca 2 was rejected by the Copyright Office on March 22, 2018 (Amended Counterclaim at ¶ 32), but does not allege the basis for the rejection and does not allege any facts as to why the Copyright Office's rejection was improper.

Tabarka asserts that the author of the Works was non-party Meir Zenati ("Mr. Zenati"), and that "Mr. Zenati transferred his ownership interest in Paris Metro 1, Casablanca 2, and Paris Metro 11 to Tabarka by oral agreement." (Amended Counterclaim at ¶¶ 8, 17-18). These allegations, however, are in clear conflict with the authorship information registered with the Copyright Office in August 2017 and relied upon by Tabarka. (*See* Information from the Copyright Office's Online Public Database, attached as Exhibits A1-A3). According to Tabarka's filings with the Copyright Office, the "author" of Paris Metro 1 and Paris Metro 11 purports to be non-party "Darna, Inc."

As a matter of historic fact, Tabarka did not exist as a corporate entity until 2009. (*See* Arizona Corporation Commission Records, attached as Exhibit B). Darna, Inc. ceased existing as an entity in late-2006. (*See* California Secretary of State Certificate, attached as Exhibit C).[1] Darna, Inc. was suspended by the California Secretary of State on October 19, 2006 and by the California Franchise Tax Board on December 1, 2006. (*See* Exhibit C). The Amended Counterclaim is thereby also notable for what it does not allege.

The Amended Counterclaim does not allege any merger between Darna, Inc. and Tabarka. The absence of such an allegation is not surprising given that Darna ceased to exist in 2006 and Tabarka was not incorporated until three years later. (*Cf.* Exhibits B and C). Nor does the Counterclaim allege the existence of any writing in which Darna, Inc. transferred its exclusive rights in the Paris Metro 1, Paris Metro 11, or Casablanca 2 works to Mr. Zenati, Tabarka, or anyone else.

---

[1] As noted below, because Merola moves to dismiss under Rule 12(b)(1), the Court may consider extrinsic evidence without transforming the present motion into one for summary judgment. *See St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (a court reviewing its own jurisdiction may "rely on affidavits or any other evidence"); *see also Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

1

## II.    ARGUMENT

2

### A.    Legal Standards

3

A motion to dismiss for lack of subject matter jurisdiction brought pursuant to Rule

4

12(b)(1) may facially attack the existence of subject matter jurisdiction or may challenge the

5

truth of the alleged facts that would confer subject matter jurisdiction on the court.  *Renteria*

6

*v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co. v.*

7

*Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)).   Courts are permitted to

8

consider evidence to decide a factual attack on subject matter jurisdiction, and "no

9

presumptive truthfulness attaches to the plaintiff's allegations." *Id.*; *see also St. Clair v. City*

10

*of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (a Court reviewing its own jurisdiction may

11

"rely on affidavits or any other evidence").  "The party asserting jurisdiction has the burden of

12

proving all jurisdictional facts." *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th

13

Cir. 1990).  Where a claimant lacks standing, the court must dismiss the action for lack of

14

subject matter jurisdiction pursuant to Rule 12(b)(1). *Ervine v. Desert View Reg. Med. Ctr.*

15

*Holdings, LLC*, 753 F.3d 862, 868 (9th Cir. 2014).

16

When considering a Motion to Dismiss under Rule 12(b)(6), the Court must insist that

17

the counterclaim contain factual allegations sufficient to "raise a right to relief above the

18

speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a

19

[counterclaim] need not contain detailed factual allegations [] it must plead 'enough facts to

20

state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534

21

F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial

22

plausibility when the plaintiff pleads factual content that allows the court to draw the

23

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

24

25

26

556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Though "allegations of material

fact are taken as true," legal conclusions couched as factual allegations are not given a

presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences

are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir.

1998).

**B.**      **The Court Lacks Subject Matter Jurisdiction over Tabarka's Claims of Infringement of the Paris Metro 1 and Paris Metro 11 Works**.

**1.**      **Lack of Standing Implicates the Court's Subject Matter Jurisdiction**.

The United States Supreme Court has recognized that "[t]he federal courts are under an

independent obligation to examine their own jurisdiction, and standing 'is perhaps the most

important of [the jurisdictional] doctrines.'"  *FW/PBS v. Dallas*, 493 U.S. 215, 231 (1990)

(quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)), overruled, in part, on other grounds, *City

of Littlejohn v. Z.J. Gifts D-4, LLC*., 541 U.S. 774 (2004).  Moreover, "it is the burden of the

'party who seeks the exercise of jurisdiction in his favor…clearly to allege facts

demonstrating that he is a proper party to invoke judicial resolution of the dispute.'"  *Id.*

(quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975); *McNutt v. General Motors Acceptance

Corp.*, 298 U.S. 178, 189 (1936)).  Consistent with these foundational principles, the federal

courts have consistently recognized that "[s]tanding is an essential component of the case or

controversy requirement of Article III, section 2 of the United States Constitution."  *Carroll

v. Nakatani*, 342 F.3d 934, 940 (9th Cir. 2003).

The threshold requirement to prevail on a claim of copyright infringement requires

proof of ownership of a valid copyright. *See Feist Publications, Inc. v. Rural Telephone

Service Co.,* 499 U.S. 340, 361 (1991); *see also Litchfield v. Spielberg,* 736 F.2d 1352, 1355

(9th Cir. 1984) ("To prove copyright infringement, the plaintiff must show...ownership of the copyright…"); *National Center for Jewish Film, Inc. v. Goldman*, 943 F.Supp. 113 (D. Mass. 1996) (party claiming ownership of a copyright by transfer bears the burden of proving a clear chain of title.).

If a claimant does not own a copyright, the claimant does not have standing to sue for infringement of the exclusive rights belonging to the owner. *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 889 (9th Cir. 2005) ("only the owner of an exclusive right under the copyright is entitled to sue for infringement"). Moreover, the owner of the copyright must have owned the copyright at the time the alleged infringement took place. *See* 17 U.S.C. § 501(b) (the "owner of an exclusive right under a copyright is entitled...to institute an action for any infringement of that particular right committed *while he or she is the owner of it.*") (emphasis added).

> **2.** **Tabarka Lacks Standing to Sue for at Least the Paris Metro 1 and Paris Metro 11 Designs.**
>
>> i. Three of the Works were created when Tabarka did not exist, and nothing in the pleadings indicates a valid transfer to Tabarka.

"Copyright in a work...vests initially in the author or authors of the work." 17 U.S.C. § 201(a).   Termination of a grant to the copyright contains "intricate formalities" that are particularly cumbersome and technical when the work was made for hire. *See Siegel v. Warner Bros. Ent., Inc.*, 658 F. Supp. 2d 1036, 1041 (C.D. Cal. 2009).

As demonstrated above, Darna, Inc. ("Darna") ceased to exist as a corporate entity in December 2006.  (*See* Exhibit C).  A "suspended corporation cannot sell, transfer or exchange real property in California, and contracts entered into during the time of suspension are voidable...through legal action...Nor, during the period of suspension, may the corporation

prosecute or defend an action, seek a writ of mandate, appeal from an adverse judgment, or renew a judgment obtained before suspension." *City of San Diego v. San Diegans for Open Government*, 207 Cal.Rptr.3d 703, 709 (Ct. App. 2016).  Moreover, Tabarka did not exist as a corporate entity until April 21, 2009.  (*See* Exhibit B).

According to the Amended Counterclaim, the Casablanca 2 work[2] was created in 2007—a time during which neither Tabarka nor Darna existed.  (Amended Counterclaim at ¶ 17).  According to the Amended Counterclaim, the Paris Metro 1 and Paris Metro 11 works were created in 2008—again, a time period during which neither Darna nor Tabarka existed. *Id.*  Despite its non-existence as a viable corporate entity, the Copyright Registrations on which Tabarka predicates its claims related to the Paris Metro 1 and Paris Metro 11 works vested "Darna, Inc." with "Authorship on Application."  Importantly, Darna's suspension at the time the works were created does not mean Mr. Zenati becomes the author by "luck" of having created a work whereby the authorship vested in a defunct corporation. *See, e.g.*, *Embassy Software Corp. v. eCopy, Inc.*, 592 F. Supp. 2d 225, 230 (D.N.H. 2009) ("The fact that a corporate act is ultra vires, however, does not mean that the act is necessarily void, or even voidable. According to the better reasoning, a corporation has the capacity, even if it does not have the authority, to do an ultra vires act"). Instead, the ultra-vires doctrine prevents

---

[2] Tabarka initially alleged that Mr. Zenati created the Works "in his role as artist" for non-party, Darna. (Original Counterclaim at ¶ 19). The Original Counterclaim also nakedly alleged that assets of Darna were "transferred to" Tabarka. (Original Counterclaim at ¶ 17). Tabarka subsequently dropped all mentions of Darna in its Amended Counterclaims. In the Amended Counterclaim, Tabarka fails to allege authorship of Casablanca 2 and fails to allege who it represented was the author of Casablanca 2 in its dealings with the Copyright Office. Tabarka also failed to produce anything in its MID Responses that gives Merola notice of who it contends is the author of Casablanca 2. Therefore, Merola can only guess that the Paris Metro Works' authorship issues extend to Casablanca 2. In any event, Tabarka has not alleged sufficient facts to demonstrate that it has standing to sue for infringement of the Casablanca 2.

Mr. Zenati from benefiting from the fact that he failed to pay taxes and failed to operate his corporations in good-standing.

Under California corporate law, Darna lacked the ability to author or own authorship of the subject works on application.  Further, the application for the subject works was not made until August 2017—a date long-after which Darna ceased to have the corporate capacity to seek registration of the subject works. *City of San Diego*, 207 Cal.Rptr.3d at 709.  Nor did Darna have the capacity to validly transfer its exclusive rights in the subject works to Tabarka. *Id*.  Despite this, Tabarka listed itself as the "copyright claimant" on its registrations for Paris Metro 1 and Paris Metro 11, and told the Copyright Office that the transfer was "by written agreement." (*See* Public Catalog Entry, Exhibits A1 and A2).

Despite this proclamation to the Copyright Office by Tabarka, no such written agreement is now alleged to have existed at the time registration was sought (on August 15, 2017), and no such written agreement has been produced despite the parties exchange of MIDP Responses on May 7, 2018.  Instead, Tabarka's Amended Counterclaim merely alleges that "Mr. Zenati transferred his ownership interest in Paris Metro 1, Casablanca 2, and Paris Metro 11 to Tabarka by oral agreement" and then later "memorialized" the agreement on May 1, 2018.  (Amended Counterclaim at ¶¶ 17-19).  The Amended Counterclaims are categorically silent as to how any rights were transferred from Darna to Mr. Zenati, thereby rendering the alleged transfers of rights from Mr. Zenati to Tabarka invalid and irrelevant.

ii.  Rights were not validly transferred to Mr. Zenati or to Tabarka.

Where a plaintiff asserts standing based upon transfer of an exclusive right, the transfer must comply with the writing requirements of § 204 (a) of the United States Copyright Act. *See McCormick v. Amir Construction, Inc.*, 279 Fed. Appx. 470 (9th Cir. 2008).

Section 204 (a) of the United States Copyright Act provides, in pertinent part:

> A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and *signed by the owner of the rights* conveyed or such owner's duly authorized agent.

*See* 17 U.S.C. § 204 (a) (emphasis added).  The parties cannot waive the § 204 requirements, nor can parties avoid a failure to comply with the writing requirement.  Rather, the writing requirement is absolute.  *See*, *e.g.*, *Asset Marketing Systems, Inc. v. Gagnon*, 542 F.3d 748, 754 (9th Cir. 2008).

Here, the Amended Counterclaim does not allege facts demonstrating that the ownership of any copyright vested in Tabarka "as a matter of law."  Accordingly, Tabarka was required to demonstrate that a writing existed that validly transferred ownership of the copyrights in the Paris Metro 1, Paris Metro 11, and Casablanca 2 works to it. *Id.*  Tabarka does not allege the existence of any such writing.  Instead, Tabarka simply ignores the fact that the rights in at least Paris Metro 1, Paris Metro 11, and Casablanca 2 never belonged to Mr. Zenati. Tabarka attempts to evade the requirements of § 204 by claiming that Mr. Zenati transferred *his* rights orally, which he later memorialized in a writing.   (Amended Counterclaim at ¶¶ 17-19).  Again, the rights were never Mr. Zenati's to begin with, and nothing in the Amended Counterclaim explains how or if the rights were transferred from Darna to anyone else.

iii.  <u>Tabarka's claims related to Paris Metro 1, Paris Metro 11, and Casablanca 2 should be dismissed</u>.

Because Darna lacked the corporate capacity to create the Paris Metro 1, Paris Metro 11, and Casablanca 2 works, it could not be a valid author or owner of those Works.  Because Darna lacked the corporate capacity to enter into any agreements with Tabarka (or anyone

else), it could not assign rights in these Works to Tabarka.  Simply put, Tabarka cannot demonstrate that it has standing to sue for alleged infringement of the Paris Metro 1, Paris Metro 11, or Casablanca 2 works.  Accordingly, all claims related to those Works should be dismissed. *Silvers,* 402 F.3d at 889.

### C.      Tabarka Has Failed to State a Claim.

Tabarka has not pled enough facts to state a claim to relief for infringement of a valid copyright with respect to the Paris Metro 1, Paris Metro 11, and Casablanca 2 designs that is plausible on its face. *See Twombly*, 550 U.S. at 570.  This conclusion is compelled by, at the very least, Tabarka's failure to plead facts demonstrating a necessary chain of title. Additionally, with respect to the Casablanca 2 design, Tabarka has failed to allege any facts demonstrating why the Copyright Office's rejection of registration was improper.

#### 1.      Tabarka has failed to plead facts demonstrating ownership of a valid copyright in Paris Metro 1, Paris Metro 11, and Casablanca 2.

As detailed above, Paris Metro 1, Paris Metro 11, and Casablanca 2 suffer from facially-invalidating ownership issues. Under 17 U.S.C. § 201, copyrights in, at least, Paris Metro 1 and Paris Metro 11 initially vested in Darna.  Tabarka has not pled sufficient facts demonstrating a transfer of purported rights from Darna to Tabarka. Furthermore, Tabarka cannot amend the Counterclaim consistent with its previous pleadings to demonstrate a transfer from (non-existent) Darna to Tabarka.  *See, e.g., Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986) ("If the complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts *consistent with the challenged pleading* could not possibly cure the deficiency.") (emphasis added).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

In contrast to the allegations in the Amended Counterclaim, the registrations for the Paris Metro 1 and Paris Metro 11 purport to vest authorship in Darna as an "employer for hire."  (Exhibits A1 and A2).[3] If a work is made for hire, the employer for whom the work was prepared is the deemed the initial owner of the copyright. *See* 17 U.S.C. §§ 201(a), 201(b). Moreover, "the 1976 Copyright Act contains many intricate formalities that an author (or his or her heirs) must navigate to successfully terminate the grant to the copyright in an original work of authorship, but perhaps none is more fundamental an impediment than the one excluding from the reach of termination the copyright 'in a work made for hire.'" *Siegel*, 658 F. Supp. 2d at 1041 (citing Melville B. Nimmer, Nimmer on Copyright § 5.03[A] at 5–12 (2008) (commenting that the exclusion "relating to termination of transfers is probably the most important feature of the work for hire doctrine with respect to works created at present"); 3 William F. Patry, Patry on Copyright § 7:42 (2008) (labeling as a "significant exclusion" to the right to terminate the grant in "work-for-hire creations")).

16
17
18
19
20
21

Here, Tabarka purports to rely on the "presumptive validity" of the registrations for the Paris Metro 1 and Paris Metro 11 works. However, such presumption—unless rebutted—only devolves to the benefit of Darna, Inc.  *Id*.  Darna, Inc. is not the Counterclaimant.  Tabarka is the Counterclaimant.  However, Tabarka has not alleged sufficient facts to show that it has come anywhere close to compliance with the "intricate formalities" necessary for Darna to

22
23
24
25
26

[3] Separate and apart from this Court's consideration of the attached Exhibits in deciding the Rule 12(b)(1) Motion, the Court may also judicially notice matters pursuant to Federal Rule of Evidence 201 in deciding the Rule 12(b)(6) Motion. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988). The court may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed "matters of public record").

transfer its ownership of the subject works. *Id*.  Nor can Tabarka baldly allege ownership of such works, when such allegations are clearly contradicted by the Copyright Office registrations. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (explaining "allegations that contradict…matters properly subject to judicial notice" are not required to be accepted as true, and taking into consideration two documents properly treated as "part of the complaint").

Simply put, the discrepancies in Tabarka's allegations and in its registered copyrights, absent any explanation by Tabarka in the counterclaims, are fatal to Tabarka's claims at this stage.

### 2.    <u>Merola has failed to state a claim with respect to Casablanca 2.</u>

Tabarka admits that Casablanca 2 is not registered. Therefore, to properly state a claim for infringement, Tabarka was required to plead, at the very least, facts demonstrating why the rejection by the Copyright Office was improper.  Here, however, Tabarka has not even alleged facts demonstrating the basis for the rejection of the Casablanca 2 registration; and Tabarka certainly does not allege facts demonstrating that the rejection of the Casablanca 2 registration was improper. *See, e.g.*, *Aqua Creations USA Inc. v. Hilton Hotels Corp*., No. 10 CIV. 246 PGG, 2011 WL 1239793, at *3 (S.D.N.Y. Mar. 28, 2011), aff'd sub nom., *Aqua Creations USA Inc. v. Hilton Worldwide, Inc*., 487 Fed. App'x 627 (2d Cir. 2012) (explaining district court's role in evaluating a copyright rejected by the Copyright Office, and dismissing copyright infringement claim "because [claimant] has not pled facts demonstrating" that its design could overcome issues identified by the Copyright Office regarding the design's utility).  Because Tabarka has not pled the requisite facts with respect to Casablanca 2, it has

1    failed to state a claim for infringement.  Therefore, claims related to Casablanca 2 should be

2    dismissed.

3    **III.    CONCLUSION**

4          For all of the foregoing reasons, Merola respectfully requests that the Court dismiss

5    Tabarka's infringement claims with respect to the Paris Metro 1, Paris Metro 11, and

6    Casablanca 2 works.  Merola further gives notice of its intent to seek attorneys' fees as the

7    
8    prevailing party.

9

10

11   Date:  May 15, 2018                       Respectfully submitted,

12                                             By: */s/    Erin D. Knese*
                                               Steven E. Holtshouser (admitted *pro hac*
13                                             *vice)*
                                               Erin D. Knese (admitted *pro hac vice)*
14                                             HUSCH BLACKWELL LLP
                                               190 Carondelet Plaza, Suite 600
15                                             St. Louis, MO 63105
                                               314-480-1500 Telephone
16                                             314-480-1505 Facsimile
17                                             steve.holtshouser@huschblackwell.com
                                               erin.knese@huschblackwell.com
18
                                               and
19

20                                             Scot L. Claus
                                               Arizona Bar No.
21                                             DICKINSON WRIGHT PLLC
                                               1850 N. Central Avenue, Suite 1400
22                                             Phoenix, AZ  85004
                                               602-285-5086 Telephone
23                                             844-670-6009 Facsimile
                                               sclaud@dickinsonwright.com
24

25                                             *Attorneys for Plaintiff/Counterdefendant*
                                               *Merola Sales Company, Inc.*
26

1   **<u>CERTIFICATE OF SERVICE</u>**

2         I hereby certify that on May 15, 2018, I electronically transmitted the attached document

3   to the Clerk of the Court using the CM/ECF system, and which will be sent electronically to all
registered participants as identified on the Notice of Electronic Filing, and paper copies will be

4   sent to those indicated as non-registered participants.

5                                     By:*/s/  Erin D. Knese*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26